## Franklin D. Cummings v. Samuel C. Freer and others.

*Bill in equity: Demurrer: Multifariousness: Deed: Description: Mistake.*
Where a father, in making a gratuitous distribution of some of his lands among his sons, has made a mistake in the description of the land in a deed to one of them, and the grantee in such deed has taken possession and improved the lands intended thereby to be conveyed, and given a mortgage upon the same, and afterwards, on discovery of the mistake in the deed after the father's death, has

procured the other heirs, except one, to convey the lands by proper description,. to his wife, for the purpose of defrauding the mortgagee, a bill to foreclose the mortgage, which joins as defendants, the wife of the mortgagor and the heir whose interest was not conveyed to such wife, and seeks to litigate their rights to the lands as against the mortgage, setting out all the facts, and prays for a foreclosure of the mortgage and for a correction of the mistake in said deed, is not demurrable on the ground of multifariousness in this regard; nor is the complainant required to wait till he has foreclosed the mortgage and become the purchaser, before he can litigate such adverse claims to the land.

The decision on this point is, however, expressly confined to the case of an alleged error or mistake in description.

*Bill in equity: Demurrer: Deed: Consideration.* Such a bill is not demurrable for want of equity. It is entirely unimportant whether any consideration was paid to the father for the deed, or whether the conveyance was made in pursuance of a prior agreement; the case stands in this regard, at least so far as the other sons are concerned, who also received a portion of the father's estate at the same time, upon substantially the same principles as if the sons had inherited the whole of the lands so distributed to them and held them as tenants in common, and were undertaking to make amicable partition, and the same mistake had occurred—the portion received by each being a consideration for his conveyance to the other.

*Deed: Mistake: Consideration: Mortgagee: Equity jurisdiction.* Where, in a deed given in consideration of love and affection only, a mistake in the description of the premises has occurred, and the grantee, on the faith of such deed, has gone into possession, made improvements and expended money on the lands, a mortgagee of such grantee, who has taken his mortgage in good faith, after such possession and improvements, may maintain a bill for the correction of the mistake against the grantor or his heirs, or purchasers from them without consideration; such mortgagee has the superior equity, as against such grantor and his heirs, and especially as against parties who have assumed to take a conveyance from them without consideration and for the fraudulent purpose of defeating the mortgage.

*Deed: Mistake: Good faith.* The fact that the mistake was such that it might have been discovered by a careful inspection of the record is, under the circumstances of this case, immaterial; it does not lie with the grantor, or his heirs, or a purchaser from them without consideration, to insist that the mortgage was not taken in good faith, on this ground, since it does not appear that any of the parties did, in fact, discover it till after the mortgage was given.

*Deed: Mistake: Correction: Decree.* The complainant in this case having no interest in the correction of the deed, except to make the land available for the satisfaction of the mortgage by securing a good title to the purchaser at the foreclosure sale, a decree was entered, requiring the execution and delivery by the adverse claimants, of a release and quit-claim to such purchaser.

*Heard October 23. Decided November 7.*

Appeal in Chancery from Washtenaw Circuit.

*C. Joslin* and *Felch & Grant,* for complainant, were stopped by the court.

*Lawrence & Frazer,* for defendants.

. CHRISTIANCY, CH. J.

The bill in this case was filed by John M. Cummings, and is prosecuted by his executor. Though unartificially drawn, it presents, when its statements are placed in logical order, substantially the following state of facts, as the basis of the relief which it asks: That in the year 1842, one Jonas E. Freer, of the township of Lima, in Washtenaw county, having four sons hereinafter named, and being the owner in fee of the south half of section twenty-one, and the west half of the northwest quarter of the same section, in said township, had before that day (no particular day had been previously mentioned), agreed to sell and convey the west-half of the southeast quarter of said section, to his son, Samuel C. Freer (one of the defendants); and *on that day*, "in pursuance of said agreement, and for a good and sufficient consideration," executed and delivered to said Samuel C. Freer, a deed, which both parties supposed to be a good and sufficient deed for the conveyance of said lot (west half of southeast quarter), in pursuance of said agreement; that on the same day of the date of said deed to said Samuel C., the said grantor executed deeds to his three other sons, conveying to them all the balance of his said lands on said section, the several portions thereof to each in severalty; that (among other lands) the conveyance to Alba Freer was of the east half of the southeast quarter of said section, excepting a right of way across it for the use of said Samuel C.,—thus deeding to his four sons all the land which the grantor thus owned; that said Samuel C. soon afterwards entered into the possession of said west half of southeast quarter, so intended to be conveyed to him, which was then mostly wild, and has continued to occupy it ever since, and has made large improvements thereon.

That Jonas E. Freer, the grantor, died in the year 1854, leaving no estate.

That in the drawing of the said deed to said Samuel C., a mistake was made (as appears in the record thereof) in this: that the deed described the premises as "the west half of the south quarter" of said section, leaving out the word "east," between the words "south" and ".quarter."

That on the 8th day of December, 1857, said Samuel C., with his wife, Dolly A. Freer, also one of the defendants, executed to complainant a mortgage on said west half of southeast quarter, describing it also as the land on which said Samuel C. then resided, to secure the payment of a promissory note, made by said Samuel C. to complainant, for four hundred and thirty-nine dollars, payable December 8th, 1861, with interest at ten per cent., which mortgage was duly recorded on the 12th day of December, 1859 (referring to the book and page in the office of the register of deeds).

That after the execution and recording of this mortgage, some eight years after the death of said Jonas E. Freer, the grantor (which would be in the year 1862), said Samuel C. learned the said mistake in said deed from his father to himself; and, thereupon, at his request, and without consideration, all the heirs of said Jonas E., the grantor, except said Samuel C. and Mary Townsend (one of the defendants), executed and delivered to said Dolly A. Freer, a deed or deeds of conveyance of said premises, with the intent, on the part of said Samuel C. and Dolly A., to defraud the complainant of the benefits of his mortgage.

The bill waives an answer under oath, prays for a correction of the deed, so as to make it describe the land intended to be conveyed; and after describing the mortgage and the amount due upon it, prays for a foreclosure and sale, and for general relief.

To this bill, the defendants, Samuel C. and Dolly A. Freer, separately demurred, and this demurrer being overruled, and the bill being taken as confessed by Samuel C. Freer, and Franklin Cummings, the executor of the original complainant (John M. Cummings), having been allowed to come in and prosecute the bill, the defendants, Dolly A. Freer and Mary Townsend, put in an answer, admitting that Jonas E. Freer was the owner of the lands mentioned in the bill, in the year 1842, denying all knowledge of any agreement by him to sell the lot in question, to said Samuel C., or that said Samuel C. took possession of the lot under the deed as alleged in the bill, or that the same was nearly all wild in 1842, or that said Samuel C. occupied it for the length of time mentioned in the bill, or for any time, in his own right, or made the amount of improvements alleged; but admitting that said Samuel C., and Elisha Freer, worked a part of the land for one or two years before the death of Jonas E. Freer, and alleging that since the same was conveyed to said Dolly A., said Samuel C. had worked the same for her. They admit that Jonas E. Freer died in 1854, but deny that he left no estate; deny all knowledge of any mistake in the deed, and all allegations of mistake or fraud.

They allege that Jonas E. Freer, long after the year 1842, occupied and used the lot for his own benefit, and that, for some years after that date, said Samuel C. was at work for said Jonas E. Freer, and that said Samuel C. was a minor until after the year 1842; deny that there was any agreement for the conveyance of any other land to said Samuel C. than that described in the deed, or for any conveyance whatever, except what is shown by the deed; deny that said Jonas E. Freer deeded to his sons all the land he owned, as alleged in the bill, and allege that he exercised the same control over the lot in question, after the deed to said Samuel C., as before; admit that in the years 1862

and 1863, all the heirs of Jonas E. Freer (except said Samuel C., and Mary Townsend), by various deeds, conveyed the lot in question to Dolly A. Freer (except the undivided one-tenth, which descended to said Samuel C., and the one-fortieth part, which descended to said Mary Townsend).

They deny that, at the date of the mortgage mentioned, said Samuel C. had any right, title or interest in said lot except the said one-tenth, or that said Dolly A. then had any interest except her contingent right of dower in said one-tenth; but insist that since the date of said mortgage, said Dolly A. has acquired a good title to all except the portions above stated, as belonging to said Samuel C. and to said Mary Townsend; that she holds the same in her own right, by title paramount and adverse to the mortgage. Said Mary Townsend denies all knowledge of the mortgage. Dolly A. Freer admits the execution of a mortgage, but does not know whether the same is correctly set forth, etc.

A replication being filed, testimony was taken in the cause; and, upon the hearing, a decree was made in favor the complainant, granting the relief prayed by the bill, both as to the correction of the deed and the foreclosure of the mortgage and sale of the premises; and the case now comes to this court upon appeal. The first and most important questions arise upon the demurrers.

The demurrers were special, and the causes of demurrer are: *first*, that the bill is multifarious in joining the said Dolly A. Freer and Mary Townsend as defendants, so far as it seeks to litigate their rights, which are adverse to the mortgage, and which they insist is the legal title. And under this, it is insisted that such complainant, until he has foreclosed the mortgage and become the purchaser, has no right to litigate the titles claimed by them adverse to the mortgage; and *second*, for want of equity in the bill; and under this head the principal objection relied

upon is, that no sufficient consideration is set forth for the agreement to convey, alleged in the bill, and that it is manifest from the bill, that the agreement, if any, was for a voluntary conveyance, which a court of equity will not enforce.

We see no ground for the first objection.    The foreclosure of the mortgage would be of little avail without the correction of the deed, or a release; and as no one would be likely to bid until the deed was corrected, or a decree obtained against Mrs. Freer and Mary Townsend, for a release of the legal title claimed by them, it was for the interest both of the mortgagor and mortgagee that the correction should be made, or the decree for a release obtained, before the sale, rather than after, so as to make the mortgaged premises sell for their real value, rather than for a mere nominal sum, leaving the debt outstanding. And as the purchaser at the sale for such nominal sum, might, upon the hypothesis of the defendants, maintain the bill for the correction of the deed against defendants, Dolly A. Freer and Mary Townsend, it is in no substantial respect any more onerous to them to try the question in this suit for foreclosure than it would be to try the same question at the suit of the purchaser, after the sale.    The facts to be litigated would be precisely the same. We confine our opinion upon this point to the case before us, the case of an alleged error or mistake in description, and express no opinion upon the general question of litigating titles adverse to the mortgage, in the suit for foreclosure.

As to the second ground of demurrer, want of equity in the bill, we do not, under the circumstances of the case as set forth in the bill, deem the agreement of the father to convey to Samuel C. Freer as is alleged, of any importance in the case; since, if wholly stricken out, it will in no way prejudice the complainant's case.    The agreement, as set

out, is in no way inconsistent with the conveyance, or necessary to its support. It may therefore be rejected as surplusage. But if any agreement is necessary, it may be inferred from the deed and surrounding circumstances, stated in the bill and proved in the cause. Independent of the agreement, the transaction in reference to the deed, as set forth in the bill, was this: The grantor undertook to convey to his four sons, respectively, the whole of his lands, by conveying separate parcels of them to each (though in our view it makes little difference whether he owned other lands or not). It is entirely unimportant whether any consideration was paid to the father or not.

The father was dividing his lands upon this section among his four sons; and the case as presented by the bill, stands upon substantially the same principle, as if these four sons had inherited, or otherwise owned the whole of the lands in common, in proportion to the value of the interests undertaken to be conveyed to each, and *they* had undertaken to make an amicable partition of the lands, by conveying to each his respective portion, and the same mistake had been made,—the portion received by each being a consideration for his conveyance to the other.

This is certainly true, we think, as to the four sons of the grantor; but as there were other heirs of the grantor, who received no conveyance of any portion of these particular lands, we do not rest this portion of the case alone upon this narrow ground. The other heirs, if they did not receive other property or lands, understood to be their portion of their father's property, might stand, in reference to this lot undertaken to be conveyed to Samuel C. Freer, in the same position the grantor would now occupy, if still living; and, as to him, the deed being voluntary on his part, if no valuable consideration was paid, unless shown

that Samuel C., in consideration of it, had given up, or was in some way deprived of his share, or some portion of the share of property which he might otherwise have received from his father, such deed might in one sense be treated as a voluntary deed; that is to say, before its execution he may have been under no legal obligation to execute it; and, a mere agreement to execute such deed as a gratuity, though in consideration of natural love and affection to a son, where the grantee had not gone into possession, or done, given up, or expended any thing on the faith of it, and no equities of other parties had intervened, would not, perhaps, be enforced by a decree for a conveyance.

But after such deed has been executed and delivered, and the grantee, on the faith of it, has gone into possession, made improvements, and expended money upon it, I see no reason to doubt his right to sustain a bill against the grantor or his heirs, for the correction of a mistake in the deed, if he can show the mistake, and the land clearly intended to have been embraced. And under these circumstances, the case of a mortgagee of the grantee, who has taken his mortgage in good faith, after the grantee has thus been held out to the world by the grantor and his heirs, as the owner of the land, living upon, improving, and treating it as his own, is still stronger; notwithstanding the mistake might have been discovered by a careful inspection of the record, such a mortgagee has clearly the superior equity, as against such grantor and his heirs, and especially as against parties who have assumed to purchase from the grantor or his heirs without consideration, and for the fraudulent purpose of defeating such mortgage.

It does not lie with the grantor, or his heirs, or purchasers from them without consideration, to say that the

mortgagee did not take his mortgage in good faith, because a careful inspection of the record would have disclosed the mistake.

The record could be no better notice to him than the deed itself was to the grantor who made it, or the grantee who received it, or than the same record was to the other heirs; and yet the grantor is not shown ever to have discovered it during his life, nor the grantee, nor any of the other heirs, till three or four years after the mortgage.

Without, therefore, going further into the objections to this bill, urged upon the argument, most of which are covered by the above reasoning, and others of which could only be noticed on a demurrer specially on the particular ground (which was not the case here), we must hold the bill sufficient, in all substantial requisites, to entitle complainant to relief.

These conclusions upon the questions arising upon the demurrer to the bill, in our view, effectually decide the case in favor of the complainant. Since, notwithstanding the exhibition on the part of the defendants and most of the other heirs, who were sworn as witnesses in the case, of a power of forgetfulness,—a talent for oblivion, coupled with an obstinate determination not to remember, which has never before been equalled in any case submitted to our examination,—a detailed examination of which, in this opinion, could not operate to their advantage, we find all the substantial allegations of the bill fully and satisfactorily proved.

But, as the decree of the circuit court was for a correction of the mistake in the deed, as well as the foreclosure of the mortgage and sale of the mortgaged premises, and it appears from the evidence that the heirs and Mrs. Freer seek to contest the allegation of mistake, and to oppose the correction of the deed, and Mrs. Freer insists upon the

CUMMINGS *v.* FREER.

validity of the conveyance of the heirs to her; and, as the complainant has no interest in having such correction made for any other purpose than to render the land available for the satisfaction of the mortgage by securing a good title to the purchaser at the sale, we have concluded to modify the decree so as not to require the actual correction of the mistake in the deed; but, in lieu of this, and in consequence of the mistake, the decree must be for execution and delivery by defendants, Dolly A. Freer and Mary Townsend, of a release and quit-claim to the purchaser at the foreclosure sale under the decree, releasing and conveying all the right and title which they, and each of them, have, or claim to have, in said mortgaged premises; and until such release and quit claim shall be duly executed and recorded, the decree to bar all such rights and claims, as against such purchaser, etc. We doubt whether these defendants are entitled to insist upon such modification, and it does not appear to have been asked for, either in the court below or in this court. But, as they oppose the correction of the deed, this decree for a release will leave them to avail themselves of any benefits they may be able to derive from leaving the deed in its present shape, after the satisfaction of the mortgage debt. With this modification, the decree of the circuit court must be affirmed, with costs to complainant in both courts; and the record must be remitted to the court below, for the execution of this decree.

The other Justices concurred.