(60 Misc. Rep. 317.)   MUSSEY v. DEMPSEY et al.

(Supreme Court, Trial Term, Fulton County. July, 1908.)

1. BILLS AND NOTES (§ 493*)—CONSIDERATION.

    Where a note expresses that it was made for value received, it is presumed that it was given for a valuable consideration.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1652, 1653; Dec. Dig. § 493.*]

2. BILLS AND NOTES (§ 518*)—ACTION ON NOTE—CONSIDERATION.

    Where plaintiff, in an action against an administrator on a note, offers in evidence an assignment of a mortgage to the maker as a consideration for the note, and the evidence leaves it doubtful whether the assignment was ever delivered, and the value of the mortgage appears to be out of proportion to the amount of the note, and the proof indicates that the minds of the parties never met, a finding that the note was without consideration, and that, if the assignment was delivered, the transaction was induced by false representations, *held* justified.

    [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 518.*]

Action by Edward Mussey against Michael Dempsey and others, administrators of Michael Tommany. Judgment for defendants.

Nelson H. Anibal, for plaintiff.

N. J. Herrick (Philip Keck, of counsel), for defendants.

VAN KIRK, J. This is an action tried before the court without a jury. The action is brought to recover on a promissory note, dated February 18, 1904, due two years after date, given, as expressed, "for value received," by Michael Tommany to Edward Mussey, for the sum of $900, with interest. The defendants are the administrators of Michael Tommany. They defend upon the following grounds: (1) That the note was never made and delivered by the deceased; (2) that the note, if made, was made without any consideration; and (3) that the note, if made and delivered, was procured by the plaintiff by false representations made by him to the deceased, based upon the allegation that the proposed consideration was a mortgage to be assigned to the deceased, which mortgage was known by the plaintiff to be valueless.

As to the first defense, I find that the note was made by the deceased and delivered to the plaintiff.

As to the second defense there is much difficulty. The note having been signed by the deceased, and having been made for expressed "value received," the presumption is that the note was given for a valuable consideration (Howell v. Wright, 41 Hun, 167, 170); but the plaintiff, in making his proof, has offered evidence as to the transaction, and has put in evidence the consideration for the note—the assignment of a mortgage bearing date the 24th day of July, 1893, made by Edward Mussey to James W. Green, to secure the payment of $1,000 and interest, recorded in the clerk's office of Fulton county in Book No. 65 of Mortgages, at page 494, on the 25th day of July, 1893. The assignment of this mortgage from Abram Mussey to Edward Mus-

sey is defendants' Exhibit A, and the assignment of the mortgage from Edward Mussey to Michael Tommany is defendant's Exhibit B. The case was tried by both sides upon the theory that this was the consideration for the note. This assignment is dated the 17th day of February, 1904, and is acknowledged on the same day before Merritt Ballou, justice of the peace. Merritt Ballou was called as a witness, and testified that this assignment was executed before him, on the day the acknowledgment is dated, by Edward Mussey, the plaintiff; no one else being present. Neither defendants' Exhibit A or defendants' Exhibit B has been recorded. The plaintiff, to establish his case, called as a witness one Vroomans, who testified that he was present when Mr. Mussey came to Mr. Tommany's house at about the date of this note and assignment, and testified to a transaction between the two by which Mr. Tommany executed the note and Mr Mussey delivered to him one or more papers, he was not positive which, which he called a mortgage. He says that Mr. Tommany took this paper, went into an adjoining room, and when he returned the witness did not see the paper, nor did he thereafter see it.

The defendants called a number of witnesses to impeach Vroomans, and the testimony was such as to cast much doubt upon his integrity. On the other hand, the defendants have called witnesses, apparently reliable, who testify that the two assignments were not found among the papers of Mr. Tommany, but were found, upon the day the inventory was taken, resting in a prominent position upon dishes which were upon this table shortly before the inventory. Before that the assignments had never been seen by the representatives of the deceased. There was evidence that Mussey, the plaintiff, was at deceased's house on the morning of the day the inventory was taken; but he denied that he put the papers on the dishes, or that he had them in his possession at that time. I am forced to believe the testimony, offered on behalf of the defendants, that they had not found these papers among the papers of the deceased, and that they had not seen the papers prior to the time of the inventory when they were discovered upon the dishes. The evidence is unsatisfactory to guide the court in finding in whose custody these papers had been between the time the note was delivered and the time the inventory was made.

There are, however, other facts to aid in solving the difficulty. In 1894, an action was brought by James W. Green, the mortgagee in the said mortgage dated July 24, 1893. Judgment of foreclosure was entered on the 4th day of March, 1895; and, on the 3d day of April, 1895, the referee sold the premises described in the mortgage to Abram Mussey (the father of the plaintiff), and thereafter, on April 15, 1895, the referee executed his deed to the purchaser, who paid the purchase price, $100. The report of sale was made and filed in the clerk's office, and judgment for deficiency entered. On September 16, 1895, an order was made by the Supreme Court vacating and setting aside the foreclosure and sale as to John Carnduff, who then owned the equity in the premises, and who was named as a defendant, but who had not been served with the summons in the action. On November 20, 1895, John Carnduff conveyed the equity in the premises in ques-

tion to his son, John A. Carnduff, who is the present owner thereof. John Carnduff had purchased the premises from Edward Mussey, November 10, 1893, and received a deed therefor, which was recorded in Fulton County Book of Deeds No. 87, page 44. In 1902, an application was made to the Supreme Court by Green, the plaintiff, for an order amending the papers and proceedings in the said action to foreclose the said mortgage, by making John A. Carnduff one of the defendants in the action in place and stead of John Carnduff, and that a supplemental or amended summons issue, directed to said John A. Carnduff, and that the plaintiff be allowed to insert proper allegations in the complaint for that purpose. An order was made directing that John A. Carnduff be made a party defendant, which order is dated May 7, 1902. An appeal was taken to the Appellate Division of the Supreme Court (reported 76 App. Div. 174, 78 N. Y. Supp. 434), and the Appellate Division held that the sale of the mortgaged premises under the judgment of foreclosure in 1895 divested the plaintiff, Green, of all his interest in the mortgage and the premises; that the purchaser at a mortgage foreclosure sale, defective and void as against the owner of the equity of redemption, because he was not made a party to the foreclosure action, becomes the assignee of the mortgage. The effect of the foreclosure sale is to transfer to the purchaser the rights of the mortgagee in the land and so much of the equity of redemption as is owned by parties to the action who were served. A purchaser at a sale under foreclosure proceedings acquires all the rights of the mortgagee in the land, including the legal title, and may bring ejectment for the land or proceed anew to foreclose the mortgage. And the court concludes:

"The sale, then, in 1895, to Mussey, although ineffective as against the rights of Carnduff, operated to transfer to Mussey the plaintiff's interest in the mortgage, and Mussey can now bring an action to foreclose this mortgage. The plaintiff, Green, no longer retains any interest which can authorize him to proceed in foreclosure; and the order setting aside the judgment as to Carnduff did not operate to set aside the sale in foreclosure. Abram Mussey, the purchaser upon that sale, bid $100 for some interest in the mortgaged premises. The sale could not be set aside without reimbursing him, and the court has not assumed to set aside the sale as to any interest save that of John Carnduff, and only the purchaser upon that sale can proceed."

Under this decision then, the mortgage given by Edward Mussey to James W. Green was foreclosed as to every one except the owner of the equity of redemption, John Carnduff; and all interest in that mortgage, together with all interest in the property, except the equity of redemption, passed to Abram Mussey. After the foreclosure sale in 1895, Abram Mussey and Edward Mussey, the plaintiff, executed a mortgage to James W. Green, covering a farm in the town of Caroga, as well as the lots covered by the mortgage foreclosed. Thereafter, but before the execution of the assignments (Exhibits A and B), the said lots were released from the lien of this second mortgage, so that the rights of all parties remained as if the second mortgage had not been given, so far as the lots covered by the first mortgage are concerned.

113 N.Y.S.—18

The indebtedness upon the first bond and mortgage was not satisfied by the second mortgage given by Abram Mussey and Edward Mussey to Green, because this second mortgage was executed and delivered after the foreclosure sale, and after the judgment of deficiency was entered. James W. Green then owned the judgment for deficiency against Edward Mussey. The second mortgage was given to pay that judgment for deficiency, not to extinguish the first mortgage, which was the property of Abram Mussey, the purchaser. "Where legal title is concerned, a mortgage, which for many other purposes is a mere chose in action, is a conveyance of the land. The interest remaining in the mortgagee is an equity. The foreclosure cuts off and extinguishes that equity, and leaves the title conveyed by the mortgage absolute." Smith v. Gardner, 42 Barb: 366. So that, after the lots were released from this second mortgage, the title to the lots (except only the outstanding equity of redemption) and all the interest which James W. Green had in the first mortgage remained the property of Abram Mussey. That first mortgage, after the foreclosure, was still a mortgage in the hands of the owner, but only for the purpose of extinguishing the equity of redemption belonging to Carnduff; otherwise, it was foreclosed. Therefore, when Abram Mussey assigned the mortgage to Edward Mussey, he assigned an instrument which then had such value only.

The fact that Edward Mussey gave the first bond and mortgage, and later the mortgage was assigned to him after he had transferred the title to the real estate to another, did not operate to extinguish the mortgage. Abram Mussey, then, at the time he executed Defendants' Exhibit A, the assignment of the said first mortgage, was the owner of these lots, except the equity of redemption and of the said mortgage; and the question remains whether or not the assignment of the mortgage conveyed the interest which he acquired at the foreclosure sale and under the referee's deed. In the said assignment is the following recital:

"That said bond and mortgage was assigned to me on the 15th day of April, 1895, under and by virtue of a deed given by Jeremiah Eggleston, referee, to me, which said deed was recorded in Fulton county clerk's office May 9, 1895 in Liber 92 of Deeds, at page 9. That said deed, by reason of a defective foreclosure of said mortgage, only conveyed to the undersigned said bond and mortgage."

It was probably the intent of the assignment to convey to Edward Mussey whatever Abram Mussey acquired under said referee's deed. The parties, however, apparently understood that, by reason of the failure to serve Carnduff in the foreclosure action, the judgment in foreclosure was entirely defective, and that the effect of the sale was simply to have transferred the bond and mortgage. The effect of the assignment, therefore, so far as the parties thereto are concerned, was to convey to Edward Mussey whatever Abram Mussey acquired by reason of his purchase at the foreclosure sale and the referee's deed in pursuance thereof.

At the time the note was executed, the assignment from Edward Mussey to Mr. Tommany conveyed, at most, not the mortgage, but the interest which Abram Mussey purchased at the foreclosure sale and secured under his deed. It conveyed the mortgage only as an instrument under which Carnduff's equity of redemption might be extinguished. Otherwise the bond and mortgage had merged in the judgment of foreclosure and the deficiency judgment resulting therefrom. Of this deficiency judgment Abram Mussey was not the purchaser at the foreclosure sale and never became the owner; so that everything of value that was offered to be transferred to the deceased was the four lots in question and the mortgage, valuable only for the purpose of extinguishing the outstanding equity of redemption. Edward Mussey was acquainted with all these transactions, and knew the fact that the premises had sold for $100 at a public sale. The judgment for deficiency went against him, and he joined in the second mortgage to secure to James W. Green the amount due on the deficiency judgment, as both parties hereto urge. He therefore was dealing with full knowledge. It seems hardly credible that, if the deceased had had full knowledge, he would have been willing to have given a $900 note for property which had sold at public sale for $100, and even that incumbered by an outstanding equity of redemption, which was not only of little value, but would probably occasion expense in attempting to clear the title. From the recitals in the assignments (Exhibits A and B) it is apparent that Mussey did not know correctly what those assignments conveyed. The minds of the parties never met, and the transaction never resulted in a binding, valid contract.

The circumstances of the case impress me very strongly against upholding the transaction. Edward Mussey owns everything Abram Mussey purchased at the foreclosure sale. It was claimed by plaintiff at the trial that the lots have considerable value. They will be left with him. The note is not a valid obligation against Tommany or his estate.

I find, therefore, as to the second and third defenses, that the note was given without valid consideration; and, if we assume the assignment was delivered to Tommany, the transaction was induced by false representations, though not willfully false.

Judgment accordingly.